WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edward J. Dominick, | No. CV 13-8247-PCT-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Wal-Mart Stores, Inc., | |
| Defendant. | |

Pending before the Court is Defendant Wal-Mart Stores, Inc.'s ("Wal-Mart") Motion for Summary Judgment. (Doc. 30). Wal-Mart has filed a statement of facts supporting its motion for summary judgment. (Doc. 31). Plaintiff, Edward J. Dominick, has filed a response in opposition to Wal-Mart's motion for summary judgment (Doc. 32) and a statement of facts in opposition to Wal-Mart's motion for summary judgment (Doc. 33). Wal-Mart has also filed a reply in support of its motion for summary judgment. (Doc. 36). The Court now rules on the motion.

**I.    Factual Background**

Plaintiff claims Wal-Mart discriminated against him because of his age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq*. (Doc. 1). On October 10, 2007, Plaintiff was hired by Wal-Mart as an overnight stocker in Cottonwood, Arizona. (Doc. 33 at 2). Plaintiff generally worked from 10:00 p.m. to 6:00 a.m. each shift. (*Id.*) Wal-Mart assigned Plaintiff to the cereal

1  aisle in the grocery side of the store throughout most of his early tenure with the
2  company. (*Id.* at 2). Plaintiff was later re-assigned to other aisles in the store. (*Id.* at 6).
3  Plaintiff's primary duties included stocking shelves, zoning his assigned aisles, assisting
4  customers, and maintaining a clean and presentable work environment. (*Id.*) For several
5  years, Plaintiff was considered a "Solid Performer" and an employee who "Exceeds
6  Expectations." (*Id.* at 11). During the relevant portions of Plaintiff's employment,
7  Plaintiff had several managers, including Heather Vance, Jennifer Forest and Renita
8  Cruz. (*Id.* at 19).

9  During the course of Plaintiff's employment, Wal-Mart had in place a Coaching
10 for Improvement Policy ("Coaching Policy"). (*Id.* at 3). Under the Coaching Policy, store
11 employees would be "Coached" when their behavior "fail[ed] to meet the reasonable
12 expectations and standards set for all associates in the same or similar position or if [the
13 employee's] conduct violates a company policy or interferes or creates a risk of
14 interfering with the safe, orderly and efficient operation of our business." (Doc. 31-1 at
15 97). During the relevant portion of Plaintiff's employment, the Coaching Policy consisted
16 of four levels: First Written Coaching, Second Written Coaching, Third Written
17 Coaching, and Termination. (Doc. 33 at 3).[1] Under the Coaching Policy, each Coaching
18 remained active for twelve months. (*Id.*). Consequently, if an employee engaged in
19 unacceptable behavior (conduct or job performance) to justify another coaching within
20 twelve months after receiving a Third Written Coaching, the employee would be subject
21 to termination. (*Id.* at 4).

22 Sometime during Plaintiff's employment, Wal-Mart implemented a new
23 automated assignment system that electronically generated "stocking" times for
24 employees based on the employees' assigned aisles and the amount of merchandise
25 delivered to the store. (*Id.*). When an employee clocked in for each shift, he would
26 receive his work assignment and an estimated "time to complete" each task from the hub

---

[1] Prior to April 2012, the Coaching Policy had the following Coaching levels: Verbal, Written, Decision-Making Day, and Termination. (*Id.* at 5).

- 2 -

station. (*Id.*) The time for each task was set to default settings in Wal-Mart's work assignment computer system. (*Id.*). The station also provided employees with electronically assigned "picking"[2] times based on the quantity of sales of that item. (*Id.* at 5). The system allows Wal-Mart managers to, at their discretion, adjust the electronically assigned times. (*Id.*)

On September 20, 2012, Plaintiff received his First Written Coaching for productivity. (*Id.* at 5). The Coaching, issued by Ms. Forest, stated that on September 18, 2012, Plaintiff "had one hour and 45 minutes for stocking" and "30 minutes for his picks" but "was just finishing up around 5am." (Doc. 31-1 at 87). The Coaching also stated that on September 19, 2012, Plaintiff had "1 hour and 45 minutes for stocking and fifteen minutes for picks" but "[a]t 4:30 [a.m.] he still had to [finish stocking]." (*Id.*) As mentioned, Plaintiff generally started his overnight shift at 10:00 p.m. and ended at 6:00 a.m. (Doc. 33 at 2). Plaintiff avers that during his Coaching meeting with Ms. Forest, he told her he believed this Coaching was discriminatory. (*Id.* at 12).

Following Plaintiff's First Written Coaching, Wal-Mart assigned him to work in other various aisles, such as automotive and hardware. (*Id.* at 6). Soon thereafter, on March 6, 2013, Wal-Mart issued Plaintiff his Second Written Coaching for productivity. (*Id.* at 7). This Coaching, again issued by Ms. Forest, stated that on March 5, 2013, Plaintiff was assigned "to work Aisle 8/9 which was 2 hours and fifteen [minutes] with a half hour of picks" and "Aisle 16/17 which was a half hour with 35 minutes of picks." (Doc. 31-1 at 88). According to the Coaching, Plaintiff "spent all night in Aisle 8 [and] never went over to help the other associates in cereal to stock or zone." (*Id.*) The Coaching went on to note that Plaintiff "was given until the end of February to learn Aisle 8" and "was expected to be able to get through both aisles and have both of them zoned." (*Id.*) In the "Action Plan" section of the Coaching document, which is required for all second and third level Coachings, Plaintiff did not state that he felt the Coaching

---

[2] A "pick" is an item located in the back of the store and that needs to be stocked. (*Id.* at 5).

- 3 -

1  was discriminatory. (*Id.*) Nor did Plaintiff inform his managers that he believed the
2  Coaching was discriminatory during the Coaching meeting itself. (Doc. 33-2 at 124–25).

3        On April 20, 2013, Wal-Mart issued Plaintiff his Third Written Coaching for
4  productivity. (Doc. 33 at 8). This Coaching was issued by Ms. Vance. (Doc. 31-1 at 89).
5  The Coaching described that on April 19, 2013, Plaintiff "only had two L carts[3] of cereal
6  and one L cart of picks" and told Ms. Vance that "he would be done by break or shortly
7  after" but "was only on his second L cart" forty-five minutes after break. (*Id.*) Thus,
8  Plaintiff "had been on the clock for three hours . . . and had only processed two L carts of
9  freight." (*Id.*) As with his previous Coaching, Plaintiff did not express that he thought the
10 Coaching was discriminatory in the Coaching document's "Action Plan" or during the
11 Coaching meeting itself. (Doc. 33-2 at 124–25).

12       On May 22, 2013, about eight months after Plaintiff's First Written Coaching was
13 issued, Wal-Mart terminated Plaintiff. (Doc. 33 at 10). Wal-Mart documented that the
14 official reason for Plaintiff's termination was "Inability to Perform Job." (*Id.*) Wal-Mart's
15 Exit Interview form, signed by Ms. Vance, noted that Plaintiff "has been coached for his
16 job performance throughout the year" but "is still continually unable to meet the stocking
17 times allotted." (*Id.* at 11). The Exit Interview form also stated that on May 21, 2013,
18 Plaintiff required "well over 4 hours to complete two hours' worth of stocking time in the
19 automotive dept. [and] had an hour and fifteen minutes worth of stocking time in the
20 hardware dept[.] afterward [which] took him the rest of his shift to complete." (*Id.*)
21 During Plaintiff's termination meeting, Wal-Mart told Plaintiff he was being discharged
22 for job performance. (*Id.* at 11–12). At no time did Wal-Mart mention that Plaintiff's
23 termination had anything to do with Plaintiff's age. (*Id.*)

24 **II.**    **Discussion**

25       In his Complaint, Plaintiff alleges Wal-Mart discriminated against him because of
26 his age in violation of the ADEA. (Doc. 1). In its motion for summary judgment, Wal-
27 Mart argues that Plaintiff cannot establish a *prima facie* case of age discrimination and

---

[3] An "L cart" is a flatbed cart with a handle that carries freight. (*Id.*)

- 4 -

that there is no genuine dispute over the fact that Plaintiff was terminated for legitimate, nondiscriminatory reasons. (Doc. 30 at 2). For these reasons, Wal-Mart contends that it is entitled to summary judgment pursuant to Federal Rule of Civil Procedure 56. (*Id.*)

### A.     Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support that assertion by "citing to particular parts of materials in the record," including depositions, affidavits, interrogatory answers or other materials, or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* A material fact is any factual issue that might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Liberty Lobby, Inc.*, 477 U.S. at 248. The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. However, in the summary judgment context, the Court construes all disputed facts in the

1  light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075
2  (9th Cir. 2004).

3        At the summary judgment stage, the trial judge's function is to determine whether
4  there is a genuine issue for trial. There is no issue for trial unless there is sufficient
5  evidence favoring the non-moving party for a jury to return a verdict for that party.
6  *Liberty Lobby, Inc.*, 477 U.S. at 249–50. If the evidence is merely colorable or is not
7  significantly probative, the judge may grant summary judgment. *Id.*

8      **B.**     **Age Discrimination under the ADEA**

9        The ADEA makes it "unlawful for an employer . . . to discharge any individual
10  [who is at least forty years of age] . . . because of such individual's age." 29 U.S.C. §§
11  623(a), 631(a). In "disparate treatment" cases such as this, where the plaintiff alleges he
12  was singled out for discrimination, "liability depends on whether the protected trait
13  (under the ADEA, age) actually motivated the employer's decision. That is, the plaintiff's
14  age must have actually played a role in the employer's decision-making process and had
15  a determinative influence on the outcome." *Reeves v. Sanderson Plumbing Prods., Inc.*,
16  530 U.S. 133, 141 (2000) (quotation omitted). Under the disparate treatment theory of
17  liability, a plaintiff in an ADEA case can establish age discrimination based on: (1)
18  "circumstantial evidence" of age discrimination or (2) "direct evidence" of age
19  discrimination. *Sheppard v. David Evans & Assocs.*, 694 F.3d 1045, 1049 (9th Cir. 2012)
20  (citing *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008); *Enlow v.*
21  *Salem-Keizer Yellow Cab Co., Inc.*, 389 F.3d 802, 811 (9th Cir. 2004)).

22        Courts "evaluate ADEA claims that are based on circumstantial evidence of
23  discrimination by using the three-stage burden-shifting framework laid out in *McDonnell*
24  *Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Diaz*,
25  521 F.3d at 1207. Under the burden-shifting framework, Plaintiff must first establish a
26  *prima facie* case of discrimination. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 916
27  (9th Cir. 1997). "Establishment of the *prima facie* case in effect creates a presumption
28  that the employer unlawfully discriminated against the employee." *Texas Dep't. of Cmty.*

1  *Affairs v. Burdine*, 450 U.S. 248, 254 (1981). If Plaintiff makes a *prima facie* case, the
2  burden shifts to Wal-Mart to articulate a "legitimate, nondiscriminatory reason" for the
3  disparate treatment. *Odima v. Westin Tucson Hotel Co.*, 991 F.2d 595, 599 (9th Cir.
4  1993) (citing *Burdine*, 450 U.S. at 252–53). If Wal-Mart provides such a reason, Mr.
5  Dominick must establish the reason is a pretext for discrimination. *See id.* Plaintiff does
6  not have to prove pretext at the summary judgment stage, but he does have to introduce
7  evidence sufficient to raise a genuine issue of material fact regarding whether Wal-Mart's
8  articulated reason is pretextual. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th
9  Cir. 2000). Despite the intermediate burden of production shifting, the ultimate burden of
10 proving discrimination remains with Mr. Dominick at all times. *See id.* at 1281; *Burdine*,
11 450 U.S. at 253.

### 1.  Plaintiff's *Prima Facie* Case

Wal-Mart argues that it is entitled to summary judgment because Plaintiff failed to establish a *prima facie* case of discrimination in violation of the ADEA. (Doc. 30 at 2). Plaintiff may establish a *prima facie* case by presenting direct evidence of discriminatory intent. *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998); *see also Tempesta v. Motorola, Inc.*, 92 F. Supp. 2d 973, 979–80 (D. Ariz. 1999). Alternatively, Plaintiff can establish a *prima facie* case circumstantially by alleging in his complaint that: "(1) [he] was at least forty years old; (2) [he] was performing [his] job satisfactorily; (3) discharged; and (4) 'either replaced by a substantially younger employee with equal or inferior qualifications *or* discharged under circumstances otherwise giving rise to an inference of age discrimination.'" *Sheppard*, 694 F.3d at 1049–50 (quoting *Diaz*, 521 F.3d at 1207).

Notably, "[a] formula based on *McDonnell Douglas* must be adapted to the facts of each case." *Douglas v. Anderson*, 656 F.2d 528, 532 (9th Cir. 1981) (citing *Hagans v. Andrus*, 651 F.2d 622, 624–25 (9th Cir. 1981)). In determining whether a *prima facie* case has been established, "the overriding inquiry is whether the evidence is sufficient to support an inference of discrimination." *Id.* (citing *Burdine*, 450 U.S. at 254). "An

1 inference of discrimination can be established by showing the employer had a continuing need for the employee's skills and services in that their various duties were still being performed . . . or by showing that others not in their protected class were treated more favorably." *Sheppard*, 694 F.3d at 1049–50 (citing *Diaz*, 521 F.3d at 1207).

The Court finds that Plaintiff has established a *prima facie* case of age discrimination. Plaintiff has met the first factor because the undisputed facts show that Plaintiff is a member of a protected class as he is over the age of forty.

To establish the second factor, that he was performing his job satisfactorily, Plaintiff offers essentially one undisputed material fact as proof. Between October 2007 and September 2012, Plaintiff was recognized on his annual reviews as either a "Solid Performer" or an employee who "Exceeds Expectations." While satisfactory job performance is a broad term that can be judged by myriad factors, the Court finds that because Plaintiff's job was essentially to stock shelves and his duties remained the same throughout his employment, this fact alone is enough to establish, for purposes of considering Wal-Mart's summary judgment motion, that Plaintiff was performing his job satisfactorily. Accordingly, Plaintiff has met his initial burden for this factor.

Plaintiff has met the third factor because the undisputed facts show that Plaintiff was discharged by Wal-Mart on May 22, 2013.

Finally, the fourth factor in establishing a *prima facie* case requires Plaintiff to show that Wal-Mart replaced him with a substantially younger employee with equal or inferior qualifications or that he was terminated under circumstances otherwise giving rise to an inference of discrimination. Plaintiff offers no evidence that he was replaced by a substantially younger employee with equal or inferior qualifications.[4] The Court finds, nonetheless, that Plaintiff was discharged under circumstances that give rise to an

---

[4] Plaintiff asserts that Wal-Mart replaced him with a sixty-two year old employee. (Doc. 33-2 at 38). However, Plaintiff makes no claim regarding the replacement employee's qualifications, nor does the Court consider a sixty-two year old employee to be *substantially* younger than Plaintiff, who was sixty-eight at the time of his discharge. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) ("In the age discrimination context . . . an inference [of discriminatory intent] cannot be drawn from the replacement of one worker with another worker insignificantly younger.")

- 8 -

inference of discrimination.

Specifically, Plaintiff argues that he was discharged under circumstances that give rise to an inference of discrimination for three primary reasons. Plaintiff alleges that: (1) one of his managers, Ms. Vance, referenced her own age during Plaintiff's first Coaching meeting and later said that stocking should not be a competition between younger and older workers; (2) Wal-Mart managers "subjectively" and "at their whim" increased other employees' stock and pick times but not Plaintiff's; and (3) younger employees were not punished or terminated for violating the same productivity standards for which Plaintiff was terminated. Taken together and believed to be true for purposes of summary judgment, these allegations give rise to an "inference of discrimination" because they "plausibly suggest" that employees outside Plaintiff's protected class "were treated more favorably" than Plaintiff. *Sheppard*, 694 P.3d at 1050 (citing *Diaz*, 521 F.3d at 1207). Plaintiff's assertion that other employees kept their jobs after he was terminated also "plausibly suggests" that Wal-Mart "had a continuing need for [Plaintiff's] skills and services because [his] various duties were still being performed." *Id.*

As Wal-Mart points out, however, Plaintiff provides very little evidentiary support for his claims. In fact, outside of his own journal logs, Plaintiff offers no support for his claims that he received only fifteen minutes for stocking and that other employees were not punished or terminated for violating the same productivity standards. Nevertheless, "[d]espite the weaknesses in the evidence offered by [Plaintiff] to establish [his] *prima facie* case, given the low threshold required, [the Court] assumes, without deciding, that [Plaintiff has] established such a case." *Coleman*, 232 F.3d at 1282.

### 2. Wal-Mart's Legitimate, Nondiscriminatory Reason

By making his *prima facie* case, Plaintiff has raised a rebuttable presumption that Wal-Mart violated the ADEA. *See Burdine*, 450 U.S. at 254. "Once a *prima facie* case has been made, the burden of production shifts to the defendant, who must offer evidence that the adverse action was taken for other than impermissibly discriminatory reasons." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (citing *Burdine*, 450 U.S. at

254). In other words, Wal-Mart must "offer a legitimate, nondiscriminatory reason for [Plaintiff's] termination." *Id.* at 892.

Wal-Mart explains that Plaintiff was terminated because he consistently failed to satisfactorily perform his job and meet Wal-Mart's productivity standards. (Doc. 30 at 2). More specifically, Wal-Mart notes that Plaintiff received four Coachings within a span of eight months due to his failure to meet his electronically assigned stock and pick times. (*Id.*)[5] Failure to meet job productivity requirements is a legitimate, nondiscriminatory reason for terminating an employee. *See Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 661 (9th Cir. 2002) (holding that "poor job performance . . . . constitute[s] a legitimate, nondiscriminatory reason" for termination); *Millsaps v. Pinal Cnty. Super. Ct.*, 494 Fed. Appx. 821, 822 (9th Cir. 2012) (unpublished) (holding that "unsatisfactory" job performance is a legitimate, nondiscriminatory basis for termination). Accordingly, the Court finds that Wal-Mart satisfied its burden by offering a legitimate, nondiscriminatory reason for Plaintiff's termination.

### 3. Plaintiff's Proof of Pretext

Because Wal-Mart has met its burden of providing a legitimate, nondiscriminatory reason for terminating Plaintiff, "the presumption [of unlawful discrimination] created by the *prima facie* case[] disappears." *Wallis*, 26 F.3d at 892 (citation omitted). "This is true even though there has been no assessment of the credibility of [Wal-Mart] at this stage." *Id.* (citing *Burdine*, 450 U.S. at 254). The burden now shifts back to Plaintiff to introduce evidence sufficient to raise a genuine issue of material fact regarding whether Wal-Mart's articulated reason was pretextual. *See Coleman*, 232 F.3d at 1282.

---

[5] The Court notes that on his 2011–2012 annual review, which took place thirteen days before Wal-Mart issued Plaintiff his First Written Coaching, Plaintiff's Hourly Supervisor Nina McGraw marked: "The company has set times for areas according to freight flow and [Plaintiff] struggles in this area." (Doc. 33-2 at 252). Additionally, on Plaintiff's 2010–2011 annual review, Ms. McGraw urged Plaintiff to "[c]ontinue to improve stocking times as we continue to make positive changes in the way IMS works." (*Id.* at 249). Plaintiff, therefore, was told for more than a year before his first Coaching that Wal-Mart wanted his stock times to improve.

- 10 -

### a. Legal Standard

Plaintiff can establish pretext to defeat summary judgment in either of two ways: (1) by offering "very little" direct evidence of Wal-Mart's discriminatory animus or (2) by offering "specific" and "substantial" indirect evidence tending to show that Wal-Mart's proffered reason for the dismissal is not credible. *Godwin*, 150 F.3d at 1221–22. As outlined by the Ninth Circuit in *Wallis*:

> [I]n deciding whether an issue of fact has been created about the credibility of the employer's nondiscriminatory reasons, the district court must look at the evidence supporting the *prima facie* case, as well as the other evidence offered by the plaintiff to rebut the employer's offered reasons. And, in those cases where the *prima facie* case consists of no more than the minimum necessary to create a presumption of discrimination under *McDonnell Douglas*, plaintiff has failed to raise a triable issue of fact.
>
> Thus, the mere existence of a *prima facie* case, based on the minimum evidence necessary to raise a *McDonnell Douglas* presumption, does not preclude summary judgment. Indeed, in *Lindahl v. Air France*, 930 F.2d 1434, 1437 (9th Cir. 1991), we specifically held "a plaintiff cannot defeat summary judgment simply by making out a *prima facie* case." "[The plaintiff] must do more than establish a *prima facie* case and deny the credibility of the [defendant's] witnesses." *Schuler v. Chronicle Broad. Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986). In response to the defendant's offer of nondiscriminatory reasons, the plaintiff must produce "specific, substantial evidence of pretext." *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983). In other words, the plaintiff "must tender a genuine issue of material fact as to pretext in order to avoid summary judgment." *Id.*

26 F.3d at 890. In short, Plaintiff must show that Wal-Mart's "proffered reason was not the true reason for the employment decision. . . . [Plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256 (citation omitted).

In this case, Plaintiff presents no direct evidence of discriminatory intent. To avoid summary judgment, therefore, Plaintiff must introduce enough "specific" and

- 11 -

1   "substantial" indirect evidence to raise a "genuine issue of material fact" as to whether
2   Wal-Mart's articulated reason is pretext for age discrimination. *Coleman*, 232 F.3d at
3   1282. A dispute about a fact is "genuine" if the evidence is such that a reasonable jury
4   could return a verdict for the nonmoving party. *Liberty Lobby, Inc.*, 477 U.S. at 248.

5   Notably, Plaintiff's bare assertions, standing alone, are insufficient to create a
6   material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. Indeed,
7   "a conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence,
8   is insufficient to create a genuine issue of material fact." *Nilsson v. City of Mesa*, 503
9   F.3d 947, 952 n. 2 (9th Cir. 2007) (quoting *Fed. Trade Comm'n v. Publ'g Clearing
10  House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997)); *see Hansen v. United States*, 7 F.3d
11  137, 138 (9th Cir. 1993) ("When the nonmoving party relies only on its own affidavits to
12  oppose summary judgment, it cannot rely on conclusory allegations unsupported by
13  factual data to create an issue of material fact." (citing *United States v. 1 Parcel of Real
14  Prop.*, 904 F.2d 487, 492 n. 3 (9th Cir. 1990))).

### b.     Analysis

16  While the Court recognizes that the Ninth Circuit "require[s] very little evidence
17  to survive summary judgment in a discrimination case," *Lam v. Univ. of Haw.*, 40 F.3d
18  1551, 1564 (9th Cir. 1994), the Court still finds that Plaintiff has not offered "specific
19  [and] substantial evidence of pretext." *Wallis*, 26 F.3d at 890. In response to the reason
20  articulated by Wal-Mart for terminating him, Plaintiff relies solely on the evidence used
21  to establish his *prima facie* case—which is almost entirely based on Plaintiff's own
22  Declaration. (Doc. 32 at 6–7). Thus, in determining whether Plaintiff produced enough
23  "specific" and "substantial" evidence to raise a genuine question as to whether Wal-
24  Mart's reasons were pretextual, the Court will consider: any evidence showing Plaintiff's
25  managers punished Plaintiff for not meeting his electronically assigned stock times while
26  "subjectively" increasing other employees' stock times; any evidence regarding Ms.
27  Vance's age-related statements; and any evidence that younger workers were not
28  punished and/or terminated for violating the same productivity standards for which

1    Plaintiff was terminated.

2    Plaintiff first argues that a "glitch" in Wal-Mart's automated system often 3 assigned him fifteen minutes to complete his nightly tasks. (Doc. 33 at 23). 4 Consequently, Plaintiff claims, three managers, Ms. Forest, Ms. Vance and Ms. Cruz, 5 discriminated against him by punishing him for failing to meet the assigned stock and 6 pick times which no one could satisfy, "regardless of age," because the times were 7 "unrealistic" and "impossible." (Doc. 1 at 3; Doc. 32 at 7; Doc. 31-1 at 34; Doc. 33 at 8 23). During his deposition, however, Plaintiff admits that Ms. Vance and Ms. Forest 9 sometimes *increased* his stock times. (Doc. 31-1 at 37). Yet, Plaintiff argues that he was 10 "targeted" and "discriminated against" because he was consistently given only fifteen 11 minutes to perform "unrealistic" tasks and punished when he failed to meet the assigned 12 timeframe. (Doc. 33-2 at 73, 151). Plaintiff admits that his only evidence indicating he 13 was assigned a fifteen minute stock time, much less being punished for failing to meet 14 such a time, is his journal log. (Doc. 33 at 13).

15   To that end, noticeably absent from any of the Coaching documents, their 16 corresponding "Action Plans," and Plaintiff's journal log is any evidence that Plaintiff 17 was Coached for failing to meet a fifteen minute stock time. The crux of Plaintiff's claim 18 is that he was assigned "impossible" stock times and punished for failing to meet them. In 19 truth, however, the stock times resulting in Plaintiff's Coachings were: one hour and 20 forty-five minutes with thirty minutes of picks (9/18/2012) and one hour and forty-five 21 minutes with fifteen minutes of picks (9/19/2012) (First Written Coaching); two hours 22 and fifteen minutes with thirty minutes of picks (Second Written Coaching); more than 23 two hours (Third Written Coaching);[6] and two hours (5/21/2013) and one hour and 24 fifteen minutes (5/21/2013) (Termination). Plaintiff does not dispute now, nor did he at

---

[6] During the shift resulting in Plaintiff's Third Written Coaching, Plaintiff told his manager that he would be completed with two L carts of cereal and one L cart of picks "by break or shortly thereafter." (Doc. 33-1 at 89). Plaintiff's shift began at 10:00 p.m. and his break was at 12:00 a.m. (*Id.*) Thus, he should have been completed in about two hours.

- 13 -

the time of the Coachings, that these times are accurate.[7] Therefore, even if it were deemed true that Plaintiff was assigned a fifteen minute stock time, the point is moot. Plaintiff was not punished or terminated because of a failure to complete a fifteen minute stock time; rather, he was Coached due to his failure to meet stock times for which, as discussed below, younger employees were also Coached. Plaintiff's argument, therefore, fails to show that Wal-Mart's articulated reason is pretext.

Next, Plaintiff claims that Ms. Vance told him that "[s]he could do more when she was younger than she can now." (Doc. 33-2 at 60). Plaintiff also asserts that Ms. Vance said stocking "should not be a competition between older versus younger associates." (*Id.* at 206). In the context of this case, the fact that Ms. Vance made one statement about her *own* age does not give rise to an inference of discriminatory motive. Isolated and "stray remarks are insufficient to establish discrimination" without other indicia of discriminatory intent. *Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438 (9th Cir. 1990). Indeed, the Ninth Circuit has held that the use of far more suggestive language on the part of management does not create a genuine issue of material fact as to age discrimination. *See Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993) (affirming summary judgment for employer where vice-president of personnel stated "[w]e don't want unpromotable fifty-year olds around" and a supervisor told the plaintiff "[w]e don't necessarily like grey hair" because the comments were "uttered in an ambivalent manner" and were not directly tied to the plaintiff's termination); *Nidds*, 113 F.3d at 918–19

---

[7] Plaintiff's journal does state that Plaintiff was given fifteen minutes for the task that led to his First Written Coaching. (Doc. 33-2 at 199). Notably, however, Plaintiff did not protest or even mention the alleged fifteen minute stock time during the Coaching meeting. Moreover, during his deposition, Plaintiff stated that he "ha[d] no reason to doubt" the accuracy of the one hour and forty-five minute timeframe written on the Coaching. (*Id.* at 114–15). Further, when questioned about the disparity of times between his journal and the Coaching, Plaintiff could not provide an answer. (*Id.* at 117–20). In sum, Plaintiff: 1) did not protest being Coached for failing to meet the alleged fifteen minute stock time during the Coaching; 2) agreed during his deposition that the one hour and forty-five minute time frame was correct; and 3) when shown his journal entry stating fifteen minutes, recanted without explaining the anomaly. Given the fact that a "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact," *Nilsson*, 503 F.3d at 952 n. 2, the Court does not believe a reasonable jury could find that Plaintiff was Coached for failing to meet a fifteen minute stock time.

(holding that employer's use of the phrase "old timers" did not support inference of discriminatory motive); *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1423 (9th Cir. 1990) (holding that employer's use of the phrase "old-boy network" did not support inference of discriminatory motive); *Coleman*, 232 F.3d at 1282, 1284–85 (affirming summary judgment for employer and finding use of word "promotable" by itself did not give rise to inference of age discrimination).

Furthermore, "[a]lthough [Plaintiff] has proffered sufficient evidence to raise a question of fact as to whether one member of [Wal-Mart's] management stated [she could do more when she was younger], this is not sufficient to raise a question of fact as to whether the reasons [Wal-Mart] gave for [terminating Plaintiff] were pretexts for age discrimination." *Coleman*, 232 F.3d at 1286; *see Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438–39 (9th Cir. 1990) (holding that the hiring supervisor's statement that he hired another employee over the plaintiff because he was "a bright, intelligent, knowledgeable young man" was not enough to raise an inference of age discrimination); *Liberty Lobby, Inc.*, 477 U.S. at 248 ("Factual disputes that are irrelevant or unnecessary will not be counted."). Like the age-related comments in *Nidds* and *Coleman*, Ms. Vance's comments were not tied directly to Plaintiff's termination and therefore are not enough to create an inference of age discrimination. A reasonable jury could not find that Ms. Vance's statements amount to evidence showing pretext for Plaintiff's termination.

As his last argument for pretext, Plaintiff claims that "younger workers were allowed to violate the same productivity standards with relative[] impunity—at least from termination." (Doc. 32 at 6). Plaintiff, however, fails to offer any evidence of this statement outside of his own Declaration that "To the best of my knowledge, there were no workers under 40 on my shift terminated for failing to meet productivity times during the last year of my employment." (Doc. 33-1 at 4). This statement alone does not give rise to an inference of discrimination. As courts have admonished, "a conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *Bodley v. Plaza Mgmt. Corp.*, 550 F. Supp. 2d

1085, 1087 (D. Ariz. 2008) (quoting *Nilsson*, 503 F.3d at 952 n. 2). Plaintiff's subjective belief that his assigned stock and pick times were a "set up" is insufficient to establish pretext.

In contrast, Wal-Mart has presented evidence "it Coached <u>and</u> terminated other Associates, including younger Associates, for poor productivity." (Doc. 36 at 3). Wal-Mart offers the Declaration of Ms. Vance as evidence that the company terminated younger employees for productivity reasons within the past four years. (Doc. 31-1 at 95). Wal-Mart also provides internal records which show that it Coached dozens of employees who were younger than Plaintiff between 2009 and 2012.[8] Notably, excluding Plaintiff's Coachings, seven of the nine Coachings issued by Ms. Vance and Ms. Forest during this timeframe were for employees *younger* than the age of thirty-five—even less than the ADEA's protected age of forty. (Doc. 31-1 at 152, 176, 186, 188, 197, 204, 206, 216 and 217). The ages of these employees were: 20, 21, 21, 21, 24, 24, 33, 68 and 75. (*Id.*)[9] In her thirteen months with Wal-Mart prior to this litigation, Ms. Cruz Coached only one employee, a 53 year old male, for productivity. (*Id.* at 199). Finally, Wal-Mart's internal records reveal that the company issued *at least* nine Coachings due to an employee's failure to meet an assigned stock time. (*Id.* at 150, 155, 166, 181, 195, 206, 212, 216 and 221). The ages of these employees were: 21, 21, 21, 24, 36, 56, 57, 62 and 77. (*Id.*)

---

[8] The Court notes that Wal-Mart's records do not include any terminations. (Doc. 31 at 6–8; Doc. 31-1 at 148–223). The information does show, however, that Wal-Mart issued thirty-five Coachings between 2009 and 2013, including a near equal split between employees above (18) and below (17) the age of forty. This evidence shows Wal-Mart consistently Coached employees, regardless of age, during this timeframe. Furthermore, at this stage in the *McDonnell-Douglas* burden shifting framework, the burden rests on Plaintiff to set forth evidence showing that Wal-Mart's nondiscriminatory reasons were pretext. By not providing any evidence to support his Declaration, Plaintiff has not satisfied this burden.

[9] Of particular relevance is Ms. Vance's June 22, 2013 Coaching of a 33 year old male employee. (Doc 31-1 at 197). This Coaching was the employee's Second Written Coaching. (*Id.*) Comparable to Plaintiff's Coachings, this Coaching stated that the employee was "assigned to stock the cereal aisle" and had "one and a half hours of stocking time" but "spent over four hours in the aisle and [did] not even stock[] half of the freight from th[e] evening truck." (*Id.*) The Coaching also noted that the employee "seems to struggle no matter what area he works in." (*Id.*) This Coaching clearly shows that, during the same time period as Plaintiff's Coachings, younger employees were being Coached for failing to meet *the same time requirements on the same aisles* as Plaintiff.

1 Accordingly, the fact that Plaintiff provides no evidence outside of his own Declaration
2 that Wal-Mart did not coach or terminate other employees is not sufficient to show that
3 Wal-Mart's nondiscriminatory reason was pretext, particularly in light of Wal-Mart's
4 showing that it Coached younger employees for failing to meet the same stock times as
5 Plaintiff.

### c.   Conclusion

6
7 The mere existence of a *prima facie* case based on the minimum evidence
8 necessary does not preclude summary judgment. *See Wallis*, 26 F.3d at 890 ("[I]n those
9 cases where the *prima facie* case consists of no more than the minimum necessary to
10 create a presumption of discrimination under *McDonnell Douglas*, plaintiff has failed to
11 raise a triable issue of fact."). The Court finds that Plaintiff introduced only the minimal
12 amount of evidence necessary to meet his *prima facie* burden and has not produced
13 "substantial" and "specific" evidence of pretext. "That is, [Plaintiff] has not shown that
14 'either . . . a discriminatory reason more likely motivated the employer or . . . that the
15 employer's proffered explanation is unworthy of credence.'" *Villiarimo v. Aloha Island*
16 *Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (quoting *Chuang v. Univ. of Cal. Davis*,
17 225 F.3d 1115, 1123 (9th Cir. 2000)). Plaintiff, therefore, has not met his burden of
18 introducing enough evidence to raise a genuine issue of material fact as to whether Wal-
19 Mart's articulated reason for his termination is pretextual.

20 **III.   Conclusion**

21 The Court concludes that summary judgment is proper in this action because, at
22 bottom, Plaintiff's case rests upon conclusory allegations, unsupported by fact, after he
23 had been given ample opportunity to make adequate discovery. There is, therefore, no
24 triable issue of material fact.

25 Based on the foregoing,
26 / / /
27 / / /
28 / / /

**IT IS ORDERED** that Wal-Mart's Motion for Summary Judgment (Doc. 30) is **GRANTED**. The Clerk of the Court shall enter judgment in favor of Wal-Mart and against Plaintiff. Plaintiff shall take nothing.

Dated this 16th day of March, 2015.

James A. Teilborg
Senior United States District Judge